```
                    UNITED STATES DISTRICT COURT
                    FOR THE DISTRICT OF COLUMBIA


 UNITED STATES OF AMERICA,        .
                                  .
          Plaintiff,              .  CR No. 21-0594 (TSC)
                                  .
      v.                          .
                                  .
 JOSHUA DILLON HAYNES,            .  Washington, D.C.
                                  .  Wednesday, April 26, 2023
          Defendant.              .  10:10 a.m.
 . . . . . . . . . . . . . . .


               TRANSCRIPT OF RESTITUTION HEARING
            BEFORE THE HONORABLE TANYA S. CHUTKAN
                 UNITED STATES DISTRICT JUDGE
```

**APPEARANCES**:

For the Government:        JENNIFER L. BLACKWELL, ESQ.
                           U.S. Attorney's Office
                           601 D Street NW
                           Washington, DC 20530
                           (202) 252-7566

For Defendant:             STEVEN R. KIERSH, ESQ.
                           Law Office of Steven R. Kiersh
                           5333 Wisconsin Avenue NW
                           Suite 440
                           Washington, DC 20015
                           (202) 347-0200

Court Reporter:            BRYAN A. WAYNE, RPR, CRR
                           U.S. Courthouse, Room 4704-A
                           333 Constitution Avenue NW
                           Washington, DC 20001
                           (202) 354-3186


Proceedings reported by stenotype shorthand.
Transcript produced by computer-aided transcription.

```
 1                    P R O C E E D I N G S
 2                      (Via Videoconference)
 3          THE DEPUTY CLERK:  Your Honor, we have criminal
 4   action 21-594, United States versus Joshua Haynes.  We have
 5   Ms. Jennifer Blackwell representing the government, Mr. Steven
 6   Kiersh representing Mr. Haynes.  We also have Ms. Crystal Lustig
 7   from the probation office.
 8      All parties, with the exception of Mr. Kiersh, are
 9   appearing by video, and Ms. Blackwell has a special agent
10   appearing, which she will now introduce to you, Judge.
11             THE COURT:  Yes.  Good morning.  Good morning,
12   everyone.  Mr. Haynes can you hear me?
13             THE DEFENDANT:  Yes.
14             THE COURT:  All right. Ms. Blackwell?
15             MS. BLACKWELL:  May it please the Court, this is
16   Jennifer Blackwell appearing on behalf of the Unite States
17   Attorney's Office.  I have with me Special Agent Cameron Mizell
18   with the FBI.
19             THE COURT:  Thank you.  Ms. Blackwell, are you
20   planning on having a witness?  I heard from the cameraman at
21   the sentencing.  Are you planning on having any testimony or
22   is there any evidence you intend to present other than what
23   you've already submitted?
24             MS. BLACKWELL:  No, Your Honor.  I did have a few
25   follow-ups in response to Mr. Kiersh's questions that he raised
```

1   in the memo, but I can relay those via proffer.  I was not
2   planning on introducing any witnesses at this time.
3           THE COURT:  Okay.  Go ahead.
4           MS. BLACKWELL:  Yes, Your Honor.  I heard from
5   Mr. Thevessen this morning.  He was the individual who was
6   interviewed.  We submitted his 302 as part of the exhibits that
7   we filed on Monday in response to the questions that Mr. Kiersh
8   raised in his motion.
9       Yes, the company can confirm that the items on the list
10  were covered by insurance.  Mr. Thevessen provided the name
11  of the insurance carrier.  The ZDF, who was the victim in this
12  case, received €29,989.36 that went to ZDF.  That is a little
13  less than the estimate that we sent over in the filing papers,
14  but I will note that figure was in euros, not in dollars.
15          And his last question regarding the insurance policy
16  including the requirement of subrogation, Mr. Thevessen said
17  that, under the contract, the insured pays the damage if the
18  party at fault cannot be identified.  If that changes afterward,
19  the insurer has the right to the money that can be recovered
20  from the party at fault.
21          THE COURT:  And how much did you say the insurance
22  company paid to ZDF?
23          MS. BLACKWELL:  €29,989.36 to ZDF.
24          THE COURT:  Okay.  And do you know the name of --
25  in other words, if I were to order restitution in this case,

1   I would order it payable to the insurance company since they're
2   the ones that now need to be made whole.  And do you know the
3   name of that company?
4           MS. BLACKWELL:  I do.  It is Ergo Versicherung AG.
5   I will spell that.  Ergo is E-R-G-O.  Versicherung is --
6           THE COURT:  I'll tell you what.  When I'm done, can
7   you submit a proposed order with the name?
8           MS. BLACKWELL:  Yes.
9           THE COURT:  Okay.  And address.  Thank you.
10      Anything else, Ms. Blackwell?
11          MS. BLACKWELL:  Nothing other than what the government
12  submitted on Monday, Your Honor.  Thank you, Your Honor.
13          THE COURT:  Mr. Kiersh, I reviewed your response,
14  which, basically, essentially says your client is indigent,
15  which is evidenced by the fact that he has court-appointed
16  counsel.  Do you take any issue with the legality or the legal
17  basis for the restitution order?
18          MR. KIERSH:  Not the legality, but I do want to
19  comment that communications between Mr. Haynes and myself during
20  this period have been impossible.  I understand from other
21  clients that Hazelton's been on lockdown, an extended lockdown,
22  and I have made repeated attempts to contact the facility to
23  contact his case manager.  They just don't pick up the phone at
24  Hazelton.
25          THE COURT:  Do you need a few minutes to talk with him

1   now since we're on Zoom?  You want to go into a breakout room?
2   Why don't we do that.
3           MR. KIERSH:  That would be great.
4           THE COURT:  Okay.
5       Mr. Haynes, I hope you've been able to hear Mr. Kiersh.
6   He's been really having a hard time trying to get in touch with
7   you, and he's a lawyer that I know is pretty good about getting
8   in touch with his clients.  So I'm going to allow you a few
9   minutes -- Ms. Blackwell, do you have any objection?
10          MS. BLACKWELL:  No, Your Honor.
11          THE COURT:  I'm going to allow you a few minutes to
12  talk with him so you all are on the same page, and then I'll
13  hear any additional argument Mr. Kiersh has to make.
14          MR. KIERSH:  Thank you.
15          THE COURT:  Mr. Bradley, would you put them in a
16  breakout room and let me know when you're ready?
17          THE DEPUTY CLERK:  Yes, Judge.
18      This honorable court stands in recess until return of court.
19          (Recess from 10:14 a.m. to 10:24 a.m.)
20          THE DEPUTY CLERK:  Recalling criminal action 21-594,
21  United States of America versus Joshua Haynes.  Your Honor, all
22  parties are present including Probation.
23          THE COURT:  All right.  Mr. Kiersh, have you had a
24  chance to talk with your client, Mr. Haynes?
25          MR. KIERSH:  I have, Your Honor.  Thank you.

1          THE COURT: All right. Any additional representations
2  you want to make other than what's in your response?
3          MR. KIERSH: Well, I did want to make a few comments.
4  Mr. Haynes has been incarcerated for a number of years now, and,
5  according to the BOP records, he's not eligible for release
6  until August of 2024. So he has clearly sustained a significant
7  penalty as a consequence of his conviction in this case.
8      He does not have good employment prospects when he is
9  released. When he's released, he is going to go back to his
10 hometown to reside with his mother, but he's going to go back
11 to residing with his mother with a felony conviction with a bad
12 employment record, he clearly has psychological issues, and he's
13 on Social Security disability.
14     So he faces a tremendous number of hurdles as he reenters
15 society, and I would submit to the Court that to place an
16 additional financial burden on him in the form of a significant
17 restitution payment, it's just going to make it more difficult
18 for him to adjust back into society.
19     It's going to be an additional sanction against him, which
20 I would submit to the Court is not necessary because he already
21 is suffering and will continue to suffer as a direct consequence
22 of the felony conviction he sustained in this case. And because
23 there is now -- now I know for certain there is subrogation in
24 this case, as there is in virtually every insurance policy, the
25 party that was harmed, they're not harmed. It's the insurance

1   company that needs to be made whole and --

2   THE COURT:  And they're an insurance company?

3   MR. KIERSH:  No, that's right.

4   THE COURT:  I hear you.  And I'll let you finish.

5   MR. KIERSH:  No, no.  The Court understands what I'm
6   trying to say is that -- so I would submit on that.

7   THE COURT:  And I hear you, and I understand that.
8   And I took into consideration Mr. Haynes' financial situation
9   and future financial prospects when I did not impose a fine in
10  this case because I understand he has a hard road ahead of him.

11       But the facts of this case are that Mr. Haynes -- you know,
12  there's destruction of the Capitol, and everybody who's pleaded
13  guilty has agreed to pay some amount, depending on whether it's
14  a felony or misdemeanor, towards offsetting the damage that was
15  done to our Capitol.  And that's fair and that is right, and I
16  believe it is just.

17       But Mr. Haynes went further.  As we all saw on video, he
18  willfully and deliberately, and gleefully at the time, destroyed
19  thousands of dollars worth of equipment of journalists who were
20  just simply observing and recording and not because -- and
21  because they were members of the media, they were targeted.

22       Media journalists have been kidnapped, they've been
23  imprisoned, they've been jailed, they've been killed, simply for
24  being journalists and observing and taking recordings so that we
25  could see what was going on that day.  And in doing so, they did

an invaluable service to us and the rest of the world; and they lost a lot of equipment, and a lot of equipment was damaged.

And, yes, they were compensated by insurance, but they pay premiums for that insurance. That's why they pay for that insurance, because if something like this happens, they're compensated. And insurance companies have to pay. It's a business model, but I think the restitution is warranted in this case.

I've only had -- this may be only the second time I've had -- or second or third time I've had an issue of restitution in a January 6 case, and this is the one that to me is most obvious where it is warranted because the damage is just right there. He's destroying equipment and encouraging other people to destroy it while being recorded doing so.

So I realize it is a significant financial penalty, but I think it is warranted under the statute. I'm obligated to give it if I find it is warranted under the statute. And I, like you, don't have any illusions about whether Mr. Haynes is going to be able to pay all of this. I've never sent anybody to jail or back to jail for not paying restitution or not trying.

I think everybody on this hearing is fully aware that this may never be completely repaid, but I think ordering it gives some degree of justice to the victims in this case who watched -- not only watched while their equipment was destroyed but were

1   in fear of their own personal safety.
2       So if Mr. Haynes can pay a few dollars a week, some dollars
3   a month over the course of time -- I mean, I'm not going to
4   order that he pay -- Ms. Lustig, am I required to order that
5   he pay a specific amount a month?  I don't think I am.
6           PROBATION OFFICER:  Your Honor, you can require that
7   he pay -- the minimum that we usually suggest is $25 a month.
8           THE COURT:  I'm going to go below that.  I'm going to
9   order that he pay $20 a month.  It's nowhere near -- you know,
10  goodness knows how long it will take to complete, but it is
11  symbolic and it means something, and I think it is warranted
12  in this case.  And I think that the fact that it's such a small
13  amount will allow him to pay it and move forward with his life.
14      I realize he does have a hard road to go, but I don't think
15  a $20 a month payment obligation is going to make his
16  rehabilitation and his progress that much harder; and I think
17  the award is warranted based on the facts.
18      So I am going to order -- based on the statutory factors
19  and the parties' briefing and the representations here today,
20  as well as the submissions from the government and from the
21  defense, I find that under the mandatory Victim Restitution Act
22  of 1996, ZDF -- well, now its insurer, Ergo, which will be
23  stated on the order, is a victim of Mr. Haynes' crimes, and
24  Mr. Haynes is thereby ordered to pay restitution in the amount
25  of $29,989.  He may pay that restitution in allotments of $20

1  per month.

2  Because ZDF has been reimbursed, the payment is to go to
3  the insurer, and Ms. Blackwell, the government, will submit a
4  proposed order with all the payment name and address information
5  on it.  So that's where I am.  Mr. Kiersh?

6  MR. KIERSH:  Your Honor, can the order state that
7  Mr. Haynes does not have to commence his payments until he's
8  released from the Bureau of Prisons?

9  THE COURT:  Yes.  Yes.  Mr. Haynes does not have to
10 commence payment until he is released.

11 MS. BLACKWELL:  And, Your Honor, if I may ask a
12 question?  I believe the amount I previously stated about the
13 amount that ZDF was received from insurance was in euros, and
14 that was the amount Your Honor just quoted but stated it in
15 dollars.  Is that amount in euros or dollars?

16 THE COURT:  Oh.  It was 29,989 euros.  Okay.  That
17 payment amount should be in euros, whatever the exchange rate
18 is, one-to-one, I think.  Thank you for that question.

19 MS. BLACKWELL:  Last week when I checked, it was $1.11
20 euros to dollars.

21 THE COURT:  Okay.  Thank you.  Thanks, everyone.
22 Mr. Haynes, good luck.
23 (Proceedings adjourned at 10:39 a.m.)

24

25

\* \* \* \* \* \*

CERTIFICATE

I, BRYAN A. WAYNE, Official Court Reporter, certify that the foregoing pages are a correct transcript from the record of proceedings in the above-entitled matter.

*/s/ Bryan A. Wayne*
Bryan A. Wayne